#### UNITED STATES DISTRICT COURT
#### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXIS LARA | : | CIVIL ACTION |
| Plaintiff, | : | NO. 5:20-cv-00498-JFL |
| -vs- | : | |
| SAMUEL ADAMS PENNSYLVANIA BREWERY, COMPANY, LLC, individually and d/b/a SAMUEL ADAMS, et al. | : | |
| Defendants. | : | |

#### PLAINTIFF'S MOTION IN OPPOSITION
#### TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Alexis Lara hereby moves the Court to deny Defendants, Samuel Adams Pennsylvania Brewery Company, LLC *individually and d/b/a* Samuel Adams, Samuel Adams Brewery Company Ltd, Samuel Adams Pennsylvania Brewery Company, Samuel Adams, HTSS, Inc., Kevin Moyer, *individually,* Edwin (last name unknown), *individually,* Quincy Troupe, *individually,* Derrick (last name unknown), *individually,* Bill (last name unknown), *individually,* Alison Glen, *individually,* Lewis Mars, *individually* (collectively "Defendants") Motion to Dismiss Plaintiffs Complaint and in support of Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Civil Action Complaint, Plaintiff, Alexis Lara relies on the accompanying Memorandum of Law.  A proposed Order denying Defendant's Motion to Dismiss Plaintiffs First Amended Complaint is attached hereto.

                                       **DEREK SMITH LAW GROUP, PLLC**

                      **BY**      **/s/ Seth D. Carson**
                                    Seth D. Carson, Esq.
                                    Attorney ID. No. 319886
                                    1845 Walnut Street, Suite 1601
                                    Philadelphia, PA 19103
                                    (215) 391-4790
                                    seth@dereksmithlaw.com
                                    *Attorney for Plaintiff*

DATED: June 15, 2020

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALEXIS LARA | : | CIVIL ACTION |
| Plaintiff, | : | NO. 5:20-cv-00498-JFL |
| -vs- | : | |
| SAMUEL ADAMS PENNSYLVANIA | : | |
| BREWERY, COMPANY, LLC, | : | |
| individually and d/b/a | : | |
| SAMUEL ADAMS, et al. | : | |
| Defendants. | : | |

**PLAINTIFF, ALEXIS LARA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, THOROUGHBRED SERVICES, INC, ET AL'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CIVIL ACTION COMPLAINT**

Plaintiff, Alexis Lara hereby submits the following Memorandum of Fact and Law in Opposition to Defendants Motion to Dismiss Plaintiffs First Amended Civil Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

I. **PRELIMINARY STATEMENT**

Defendants, Samuel Adams Pennsylvania Brewery Company, LLC *individually and d/b/a* Samuel Adams, Samuel Adams Brewery Company Ltd, Samuel Adams Pennsylvania Brewery Company, Samuel Adams, HTSS, Inc., Kevin Moyer, *individually,* Edwin (last name unknown), *individually,* Quincy Troupe, *individually,* Derrick (last name unknown), *individually,* Bill (last name unknown), *individually,* Alison Glen, *individually,* Lewis Mars, *individually* (collectively and hereinafter "Defendants") Motion to Dismiss Plaintiffs First Amended Civil Action Complaint challenges a perfectly sufficient pleading and seeks to dismiss every count brought by Plaintiff, Alexis Lara under Section 1981, Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.  Plaintiff, Alexis Lara ("Mr. Lara" or "Plaintiff") filed a First Amended Civil Action Complaint in the Eastern District of Pennsylvania seeking redress for injuries suffered after Plaintiff was subjected to severe and

pervasive discrimination and harassment and unlawfully terminated from his employment. Defendants' Motion is based upon misapplication of the law, misdirection, and mischaracterization of Plaintiff's First Amended Complaint.  Defendants' Motion asks the Court to ignore entire paragraphs of Plaintiff's First Amended Complaint.  Respectfully, Plaintiff suggests the instant Motion is a waste of the parties and Court's valuable time and resources when presented with a clearly sufficient pleading to withstand a 12(b)(6) motion. Plaintiff, Alexis Lara's case is a response to the discrimination, harassment, and retaliation to which Plaintiff was subjected during his employment.  Plaintiff's complaint includes claims for disparate treatment, hostile work environment, retaliation, and individual liability for aiding and abetting the discrimination and harassment alleged.  Defendants motion is more akin to one of summary judgment as Defendants suggest throughout that Plaintiff, Alexis Lara should be required to satisfy prima facia elements at the pleading stage.  And while Plaintiff, Alexis Lara's First Amended Complaint indeed satisfies the prime facie elements for each cause of action pled, Plaintiff cannot be held to this heightened standard at this time.  Plaintiff's First Amended Complaint speaks for itself.  Accordingly, Plaintiff suggests a simple review of Plaintiff's First Amended Complaint demonstrates its sufficiency with regard to all counts. Notwithstanding, Plaintiff will address each argument presented by Defendant in turn.

    II.    FACTS

    <u>See</u> Plaintiff's First Amended Complaint in its entirety (Doc 7 ECF).

    III.  **STANDARD OF REVIEW**

In deciding a Motion to Dismiss under 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable pleadings of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. City of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (internal

quotations and citations omitted). "A claim has factual plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). A claim satisfies the plausibility standard when the facts alleged "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Burtch v. Milberg Factors. Inc., 662 F.3d 212, 220- 21 (3d Cir.2011) (citing Iqbal, 556 U.S. at 678, 129 S.Ct. I 937). This "does not impose a probability requirement at the pleading stage" but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." Weems, 804 F.Supp.2d at 341; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(quoting Twombly, 550 U.S. at 556).

## IV. ARGUMENT

### A. Plaintiff is not required to plead facts that demonstrate a prima facie case in order to survive a motion to dismiss.

Throughout the instant Motion to Dismiss Plaintiff's First Amended Complaint, Defendants set forth the elements of a prima facie case arguing that Alexis Lara has not met his burden.  And while the prima facie elements are relevant in review of a motion for summary judgment, a plaintiff's cannot be required to satisfy this heighted standard prior to discovery. In conflating the standard applicable to a motion to dismiss versus one of summary judgment, Defendants raise a litany of red herrings that either intentionally or unintentionally divert attention from the relevant issue: whether Plaintiff has pled enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id.  As explained below, courts (including the U.S. Supreme Court) universally hold that the McDonnel Douglas burden-shifting framework does not apply on a motion to dismiss because it is an evidentiary standard NOT a pleading requirement. Swierkiewicz v. Sorema N. A., 534 U.S. 506,510

(2002).  The Supreme Court of the United States held in <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506 (2002) the <u>McDonnel Douglas</u> burden shifting framework does not apply at the pleading stage:

1. In reviewing a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint;
2. The complaint in an employment discrimination suit need not contain specific facts under the <u>McDonnell Douglas</u> burden-shifting framework, but instead, must contain only a short and plain statement of the claim showing that the pleader is entitled to relief under the employment discrimination statute at issue; and
3. The burden-shifting framework under McDonnell Douglas is an evidentiary standard NOT a pleading requirement.

<u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 510 (2002).

<u>See</u> <u>also</u> <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 789 (3d Cir. 2016) ("It is thus worth reiterating that, at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss.  A prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim.") (internal citations omitted); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203,213 (3d Cir. 2009) (same holding); <u>Phillips v. Cty. Of Allegheny</u>, 515 F.3d 224, 234 (3d Cir.2008) (same holding). Even post-<u>Twombly</u>, it has been noted that a plaintiff is not required to establish the elements of a prima facie case . . . Instead of requiring a prima facie case, the post-<u>Twombly</u> pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements. ") (internal citations omitted).

### B. Plaintiff's 1981 claims against all Defendants are sufficiently pled and Plaintiff should be permitted to discovery in connection with these claims.

Defendants' Motion to Dismiss strategically begins by arguing that Plaintiff's claims under Section 1981 should be dismissed at the pleading stage. Defendants begin with a flawed position to dismiss Plaintiff's 1981 claims and then argue for dismissal of Plaintiff's Title VII and Pennsylvania Human Relations Act claims based on the same flawed reasoning. And while Defendants' gross misapplication of law merits attention, Defendants' attempt to recharacterize facts in a light most favorable to Defendants causes greater concern at it violates the very standards under which a motion to dismiss must be analyzed.

Throughout their Motion, Defendants attempt to characterize Plaintiff's unlawful termination as the natural ending of a temporary assignment. Defendants have invented these facts more than a year-and-a-half after Plaintiff's termination and are not permitted to insert a contrary version of events at the pleading stage. Nowhere in Plaintiff's First Amended Complaint does Plaintiff plead that his assignment ended in connection with a temporary assignment. See Paragraphs 54, 55, 56, 57, 58, 194, 201, 202, 203, and 204 of Plaintiff's First Amended Complaint (Doc 7). Plaintiff was terminated for purportedly violating a safety rule within hours after reporting the ongoing, pervasive, discrimination and harassment and the campaign of threating retaliation to Defendant Lewis Mars. Plaintiff's pleading confirms he never violated the safety rule for which he was terminated. Accordingly, this motion to dismiss must consider that Defendants invented this reason to terminate Plaintiff's employment. Accord Phillips v. City of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

These facts alone are sufficient to establish a prima facie case of retaliation and survive Defendants' Motion to Dismiss. Plaintiff is a member of a protected class based on race. Plaintiff suffered an adverse employment action when he was terminated. If Plaintiff did not

violate the rule for which he was terminated and the termination occurred within hours after protected activity, there is an inference of discriminatory intent and a causal connection to the protected activity.  If Plaintiff can prove that he did not violate the rule for which he was terminated, the final prong of the McDonald Douglas burden shifting framework is also satisfied; that Defendants proffered reason for the adverse employment action is pretext.

While Defendants hope the court accepts its misleading characterization of Plaintiff's First Amended Complaint, a simple review of the complaint confirms a textbook example of disparate treatment.  Upon beginning his employment with Defendants, Plaintiff was thrown into a world of segregation and discrimination.  Defendants segregated the workforce and labeled the two segregated races as "white" and "yellow."  Moreover, Caucasian employees were afforded preferential treatment than similarly situated Hispanic counterparts.  White, Caucasian employees were paid more money, received favorable assignments, and were spared from Defendants' discriminatory disciplinary policies.  Hispanic employees were also subjected to harassment. See Paragraphs 68, 69, 70, 71, 72, and 73 (Doc 7).  Paragraph 75 of Plaintiff's First Amended Complaint alleges that the discrimination and harassment to which he was subjected extended to "work assignments, lunch breaks, daily meetings, discipline, and terminations." (Doc 7).

The incident that prompted Plaintiff, Alexis Lara's reports of discrimination and harassment in the workplace was based on discriminatory comments that Defendants have attempted to mischaracterizes as stray remarks.  Plaintiff's First Amended Complaint clearly indicates discriminatory comments directed at Plaintiff, Alexis Lara which began a discriminatory interaction. See Paragraphs 79, 80, 81, 82, 83. 84. And 85 (Doc 7).   Plaintiff's First Amended Complaint goes on to describe the discriminatory manner in which Defendants

reacted to reports of discrimination and harassment in the workplace by failing to enforce their own antidiscrimination policies. See Paragraphs 88, 89, 90, 91. 92. 93. 94, and 95 (Doc 7).

The discriminatory comments and Defendants refusal to enforce its own antidiscrimination policies set off a chain of events that led directly to Plaintiff, Alexis Lara's unlawful termination. Plaintiff, Alexis Lara did engaged in protected activity at least six (6) times over the next two (2) weeks and was terminated for breaking a rule that Plaintiff, Alexis Lara alleges he never violated. From the time Plaintiff first engaged in protected activity to his unlawful termination, Plaintiff's First Amended Complaint describes the type of conduct and comments Title VII and the Pennsylvania Human Relations Act seeks to eliminate. Plaintiff, Alexis Lara was subjected to intimidation and threats by the individual supervisor, Defendant, Kevin Moyer, who Plaintiff originally reported displayed preferential treatment to similarly situated Caucasian coworkers. Plaintiff's Complaint describes Defendant, Kevin Moyer's refusal to consider Plaintiff's reports of discrimination and harassment in the workplace. See Paragraphs 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, and 113 (Doc 7).

Plaintiff's First Amended Complaint describes in detail Defendant, Kevin Moyer's unlawful conduct and comments from November 29, 2018 until Plaintiff's unlawful termination. Defendant, Kevin Moyer refused to allow Plaintiff to report discrimination and harassment in the workplace, and then subjected Plaintiff to threatening, aggressive conduct and intimidation when Mr. Lara attempted to find another way to report the unlawful conduct and comments. See Paragraphs 169, 169, 170, 171, 172, and 173 (Doc 7).

Plaintiff's First Amended Complaint provides further examples of Defendants' unlawful conduct and comments which forms the basis of Plaintiff's disparate treatment claims under Section 1981, Title VII, and the Pennsylvania Human Relations Act. Plaintiff has

certainly pled facts sufficient to demonstrate the need for discovery.  If discovery confirms the same facts pled in Plaintiff's First Amended Complaint, Mr. Lara will be entitled to relief at trial.  This is the standard under which a motion to dismiss must be analyzed.

### C. Plaintiff's hostile work environment claims are sufficiently pled and Plaintiff should be permitted to discovery in connection with these claims.

Defendants asks the Court to consider Plaintiff's hostile work environment claims based only upon the November 29, 2018 interaction as described in Paragraphs 77 through 83 of Plaintiff's First Amended Complaint. (Doc. 7).  In-so-doing, Defendants ignore the pervasive atmosphere of discrimination and harassment in the workplace descried in Plaintiff's Complaint. Defendants' argument ignores the pervasiveness of a segregated workforce and particularly a segregated workforce where one race is subjected to daily harassment and abuse.  Alexis Lara has pled facts that demonstrate a nonstop, continuous abusive work environment. Defendants motion ignores entirely the pervasiveness of the discrimination and harassment to which Alexis Lara was subjected.  When analyzing if conduct is severe or pervasive, courts look to the totality of the circumstances, considering factors such as: the frequency and severity of the conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Ballard-Carter v. Vanguard Grp., 703 F. App'x 149, 152 (3d Cir. 2017) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  Defendants argument does nothing to address the abuse and disparagement inherent in segregating a workforce and treating one race as deserving of less respect and subjecting them to daily abuse.  Defendants attempt to misrecharacterize Plaintiff's claims as isolated incidents or stray remarks and not a continuous, pattern of pervasive discrimination and harassment in the workplace.  Plaintiff has pled sufficient facts to move these claims to the discovery phase which will or will not yield

evidence to support Plaintiff's claims.  While Plaintiff would suggest it is unlikely, if the evidence does not support Plaintiff's allegations, Defendants can properly revisit this issue in a motion for summary judgment.

Defendants also ignore facts pled in the First Amended Complaint where Plaintiff, Alexis Lara describes a ratcheting-up of the discrimination and harassment and the hostile work environment.  After Plaintiff began to engage in protected activity he was targeted and subjected to aggressive, violent, interactions.   This led to Plaintiff's termination from employment.

### D.  Plaintiff's retaliation claims are sufficiently pled and merit discovery.

Plaintiff, Alexis Lara's First Amended Complaint describes retaliation under Title VII, the Pennsylvania Human Relations Act and Section 1981 as Plaintiff's protected activity collimated in his unlawful termination from employment.  Plaintiff began a campaign to report unlawful conduct and comments of a discriminatory nature sometime around November 29, 2018.  Plaintiff went from supervisor to supervisor trying to find someone that would help him and take his reports of discrimination seriously.  Plaintiff even called a phone number Defendants posted as a so-called discrimination hotline and Defendants assigned a human resources representative to Plaintiff's case.  Suddenly and without warning or notice, Defendants accused Plaintiff of violating a safety rule, which Plaintiff alleges he never violated, and terminated Plaintiff's employment under this pretext.  This is the textbook example of retaliation under Title VII, the Pennsylvania Human Relations Act and Section 1981.  But there are even more facts pled in the Complaint that demonstrate the discriminatory intent required to support Plaintiff's disparate treatment claims, and the connection between the protected activity and adverse employment action required to support Plaintiff's retaliation

claims.  See Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997) ("Employee claiming retaliation in violation of Title VII can establish requisite causal link between his or her protected behavior and subsequent discharge if employer engaged in pattern of antagonism in intervening period.").  See also Id. ("Evidence of condoned harassment in workplace can support inference that employee, having failed to respond to harassment, also engaged in retaliatory conduct against complainant.").  Moreover, where a single piece of evidence may in some cases not create the causal connection, the court must consider the entire picture.  Accord Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir.1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

      The overall picture in this case demonstrates an employee who repeatedly reports discrimination and harassment in the workplace and is turned away at every turn.  Then Plaintiff's hours and benefits are effected and Plaintiff is subjected to threatening, intimidating conduct and comments.  Plaintiff continues his attempts to report the harassing and discriminatory conduct and is accused of violating a rule he never violated and terminated without any other justification.  All the while, this story unfolds within an atmosphere of pervasive discrimination and harassment in the workplace where a race of workers are segregated and subjected to disparate treatment in work assignments, pay, discipline and enforcement of Defendants own antidiscrimination policies.  Plaintiff is also subjected to daily discrimination and harassment in the workplace through ridicule and abuse.

      And then there is the temporal proximity which alone indicates a causal connection in the instant matter.  At most Plaintiff was terminated less than two (2) weeks after engaging in

protected activity. At its shortest period, Plaintiff was terminated within hours after his last example of engaging in protected activity, as Mr. Lara was terminated the same day he visited, Defendant, Lewis Mars. Accord Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close,"). O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (C.A.10 2001). See, e.g., Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (C.A.10 1997) (3– month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174–1175 (C.A.7 1992) (4– month period insufficient).

### E. Plaintiff's claims for individual liability under Section 1981 and the Pennsylvania Human Relations Act are well pled and merit discovery.

Plaintiff has named seven (7) individuals including (1) Kevin Moyer, (2) Edwin (last name unknown), (3) Quincy Troupe, (4) Derrick (last name unknown), (5) Bill (last name unknown), (6) Alison Glen, and (7) Lewis Mars in his First Amended Complaint. Everyone of these individuals holds supervisory authority over Plaintiff, Alexis Lara and was complicit in subjecting Plaintiff to discrimination and/or retaliatory treatment. The allegations supporting the inclusion of Defendant, Kevin Moyer are the most detailed. The seventy (70) times Kevin Moyer's name appears in Plaintiff's First Amended Complaint describes his involvement in almost every aspect of Plaintiff's case from refusing to allow Mr. Lara to report discrimination and harassment to intimidating and threatening Mr. Lara when he did. Defendant, Edwin was Mr. Lara's direct supervisor and was involved in the decision to terminate Plaintiff's employment. Plaintiff also names Quincy Troupe who holds proxy liability for the discrimination and harassment in the workplace. Plaintiff also visited the office of Quincy

Troupe and was not permitted to discuss or report the discrimination and harassment in the workplace at that time.  The temporal proximity between the time Plaintiff visited the office of Defendant, Quincy Troupe is sufficient evidence to suggest that Quincy Troupe was involved in the unlawful decision to terminate Plaintiff's employment.  This is also supported by Quincy Troupe's position.  Plaintiff's claims for individual liability against Defendant, Derrick are well pled in detail as Defendant, Derrick actually met with Mr. Lara more than once and promised to investigate and ameliorate Plaintiff's claims.  Defendant, Derrick did nothing he promised and allowed Kevin Moyer to stand outside his office while Plaintiff reported Kevin Moyer's unlawful conduct and comments.  Moreover, the facts indicate that Kevin Moyer was alerted to Plaintiff's attempts to report the discrimination and harassment in the workplace and Defendant, Derrick helped position Defendant, Kevin Moyer to retaliate.  Defendant, Derrick's refusal to enforce Defendants' own antidiscrimination policies in consideration of his well place position indicates Defendant, Derrick's unlawful conduct.  Plaintiff has also pled facts indicating Defendant, Derrick was involved in Plaintiff's unlawful termination.  Plaintiff's claims for individual liability against Defendant, Bill are well pled in detail as Defendant, Bill also met with Mr. Lara more than once and promised to undertake action to investigate and ameliorate Plaintiff's claims.  Defendant, Bill's refusal to enforce Defendants' own antidiscrimination policies in consideration of his well place position indicates Defendant, Bill's unlawful conduct.  Plaintiff has also pled facts indicating Defendant, Bill was involved in Plaintiff's unlawful termination.  As the human resources representative who refused to perform her responsibilities and subverted Plaintiff's reports of discrimination and harassment in the workplace, the reasons for including Defendant, Alison Glen for individual liability is clear.  Defendant, Alison Glen got involved in Plaintiff's reports of discrimination and

harassment in the workplace sometime around December 7, 2018 and Plaintiff was unlawfully terminated under a false pretext by December 13, 2018.  Plaintiff, Alexis Lara lasted 6 days from the date Defendant, Alison Glen promised to assist in Plaintiff's reports and protected activity.  If the temporal proximity of six (6) days' between the time Defendant, Alison Glen became involved in Plaintiff's protected activity and termination indicates discriminatory intent, the connection between Lewis Mars and Plaintiff's termination is even more informative.  Plaintiff engaged in protected activity on December 13, 2018 by reporting and seeking assistance from Defendant, Lewis Mars.  Plaintiff, Alexis Lara did not last even a day and was unlawfully terminated within hours after this meeting with Defendant, Lewis Mars.

The reasons for individual liability are pled in Plaintiff's First Amended Complaint.  Plaintiff worked with the individual Defendants from November 29, 2018 until Plaintiff's unlawful termination on December 13, 2018.  In that time Plaintiff was subjected to increased discrimination and harassment in the workplace, which ratcheted culminating in an adverse employment action – Plaintiff's termination.  In between Plaintiff was subjected to discriminatory discipline that similarly situated coworkers did not experience.  Plaintiff was followed and targeted for intimidation and threats.  Plaintiff had his hours reduced and was deprived of benefits.  Again, none of Plaintiff's similarly situated coworkers were subjected to this treatment.  All of this is pled in Plaintiff's First Amended Complaint and demonstrates the futility in Defendants Motion to Dismiss at this stage.

### F. Defendants' attempt to misstate law in support of the instant Motion to Dismiss.

Defendants Motion to Dismiss states several times that Plaintiff's Title VII and Pennsylvania Human Relations Act claims should be dismissed for the same reasons as Plaintiff's claims under Section 1981.  This is a misleading argument as Defendants'

justification for dismissal of Plaintiff's Section 1981 claims is that Plaintiff cannot establish an underlying disparate treatment of hostile work environment claim. And while Plaintiff suggests the above response to Defendants' argument demonstrates the sufficiency of both his disparate treatment and hostile work environment claims, Defendants argument is entirely incorrect. While a Section 1981 claim may depend upon the sufficiency of the underlying disparate treatment or hostile work environment claims, Title VII and the Pennsylvania Human Relations Act has no such requirement. The opposite is actually true. It is well settled law that "[a] successful underlying Title VII discrimination claim is not a prerequisite for a Title VII retaliation claim." Civil Rights Act of 1964 §§ 703, 704, 42 U.S.C.A. §§ 2000e-2(a), 2000e-3(a). Collins v. Kimberly-Clark Pennsylvania, LLC, 247 F. Supp. 3d 571 (E.D. Pa.), aff'd, 708 F. App'x 48 (3d Cir. 2017). Therefore, Defendants have offered no justification whatsoever for dismissal of Plaintiff's retaliation claims under Title VII or the Pennsylvania Human Relations Act.

### G. Plaintiff's Counts include a description of who the claims apply to.

Defendants argue that Plaintiff's Pennsylvania Human Relations Act claims for discrimination (Doc. 7 Count IV) cannot apply to the individuals. Plaintiff agrees and included the language "against corporate Defendants only" in the heading of Count IV. The only claims applies to the individual Defendants are Count I, Count V, and Count VI.

## V. CONCLUSION

In conclusion, Plaintiff, Alexis Lara's First Amended Complaint is sufficient to withstand Defendant's Motion to Dismiss and Defendants' Motion to Dismiss must be denied in its entirety.

**WHEREFORE,** it is respectfully requested that the Defendants' Motion to Dismiss should be denied in its entirety.

        **DEREK SMITH LAW GROUP, PLLC**

    **BY**   **/s/ Seth D. Carson**
        Seth D. Carson, Esq.
        Attorney ID. No. 319886
        1845 Walnut Street, Suite 1601
        Philadelphia, PA 19103
        (215) 391-4790
        seth@dereksmithlaw.com
        *Attorney for Plaintiff*

DATED: June 15, 2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXIS LARA | : | CIVIL ACTION |
| Plaintiff, | : | NO. 5:20-cv-00498-JFL |
| -vs- | : | |
| SAMUEL ADAMS PENNSYLVANIA BREWERY, COMPANY, LLC, individually and d/b/a SAMUEL ADAMS, et al. | : | |
| Defendants. | : | |

### CERTIFICATE OF SERVICE

I hereby certify that on this date that I caused a true and correct copy of Plaintiff's Responses to Defendants' Requests for Admissions to be served via email to:

> Lee C. Durivage
> Marshall Dennehey
> 2000 Market Street
> Suite 2300
> Philadelphia, PA 19103
> Direct: (215) 575-2584
> Main: (215) 575-2600
> Fax: (215) 575-0856
> LCDurivage@MDWCG.com

In the alternative, documents have been served by filing them with the Eastern District of Pennsylvania electronic filing system.

**DEREK SMITH LAW GROUP, PLLC**

BY: /s/ Seth D. Carson
SETH D. CARSON

DATED: June 15, 2020